**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOTER TECHNOLOGIES, LLC, | |
| Plaintiff, | |
| v. | Civ. No. 1-20-cv-05007-LJL |
| IP VIDEO CORPORATION, A+ TECHNOLOGY & SECURITY SOLUTIONS, INC., and ADVANCE CONVERGENCE GROUP, INC. | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL AND FACTUAL BACKGROUND................................................ 2

LEGAL STANDARD................................................................................................ 5

ARGUMENT ............................................................................................................. 7

     I.     The Court Should Not Dismiss Soter's Trademark Infringement Claims ............. 7

          A.     Defendants' Website Diversion Was A "Use in Commerce".................... 7

          B.     Defendants Cannot Claim Nominative Fair Use As a Defense ................ 10

          C.     Defendants' Violations of Trademark Laws Also Violated Unfair Competition Laws .................................................................................. 12

     II.     The Court Should Not Dismiss Soter's Unfair Competition Claims.................... 14

          A.     ACP Acted As IP Video's Agent In Making The "Compatibility" Statement................................................................................................ 14

          B.     Defendant' Motion Raises Factual Issues Not Amenable to Resolution on a Motion to Dismiss............................................................ 17

     III.     The Court Should Not Dismiss Soter's New York Common Law Claims........... 21

          A.     Soter Properly Pled A Product Disparagement Claim Under New York Law ................................................................................................ 21

     IV.     Plaintiff's Allegations Against A Plus and Advance Satisfied Fed. R. Civ. P. 8(a)..................................................................................................... 24

     V.     To The Extent Soter's Allegations Are Deficient, Leave to Amend Should be Granted .................................................................................... 25

CONCLUSION........................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1-800 Contacts Inc. v. WhenU.Com, Inc.,*
414 F.3d 400 (2d Cir. 2005)......................................................................................9, 10

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,*
626 F.3d 699 (2d Cir. 2010)............................................................................................26

*Alzheimer's Disease & Related Disorders Ass'n v. Alzheimer's Found. of Am., Inc.,*
307 F. Supp. 2d 260 (S.D.N.Y. 2018)......................................................................12, 13

*Ascentive, LLC v. Opinion Corp.,*
842 F. Supp. 2d 450 (S.D.N.Y. 2011)............................................................................14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..........................................................................................................6

*Audi AG v. Shokan Coachworks, Inc.,*
592 F. Supp. 2d 246 (N.D.N.Y. 2008)............................................................................11

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................................................5, 6, 23

*Bison Capital Corp. v. ATP Oil & Gas Corp.,*
2010 WL 2697121 (S.D.N.Y. June 24, 2010) ...............................................................17

*Blockchain Luxembourg S.A. v. Paymium, SAS,*
Civ. No. 18-8612, 2019 WL 4199902 (S.D.N.Y. Aug. 7, 2019)............................20

*Bridge C.A.T. Scan Associates v. Ohio-Nuclear, Inc.,*
608 F. Supp. 1187 (S.D.N.Y. 1985)...............................................................................23

*Brignoli v. Balch Hardy & Scheinman, Inc.,*
654 F. Supp. 1201 (S.D.N.Y. 1986).......................................................................22, 23

*Canon USA, Inc. v. F&E Trading LLC,*
Civ. No. 15-6015(DRH)(AYS), 2017 WL 4357339 (E.D.N.Y. Sept. 29, 2017)....................25

*Capitol Records, Inc. v. City Hall Records, Inc.,*
Civ. No. 07-6488(LTS)(KNF), 2008 WL 2811481 (S.D.N.Y. July 18, 2008)........................5

*Charles Atlas, Ltd. v. Time-Life Books, Inc.,*
570 F. Supp. 150 (S.D.N.Y. 1983) .......................................................................22, 24

*CJ Prods. LLC v. Snuggly Plushez LLC*,
   809 F. Supp. 2d 127 (E.D.N.Y. 2011) ....................................................................8

*CrossFit, Inc. v. Jenkins*,
   69 F. Supp. 3d 1088 (D. Col. 2014).......................................................................8

*Dentsply Sirona, Inc. v. Dental Brands for Less LLC*,
   2020 WL 1643891 (S.D.N.Y. April 2, 2020) ........................................................17

*Dreamcatcher Software Dev., LLC v. Pop Warner Little Scholars, Inc.*,
   298 F. Supp. 2d 276 (D. Conn. 2004)....................................................................23

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
   No. 13-2450, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)..................................15

*Galper v. JP Morgan Chase Bank, N.A.*,
   802 F.3d 437 (2d Cir. 2015)....................................................................................5

*General Sec., Inc. v. APX Alarm Sec. Sol'ns, Inc.*,
   647 F. Supp. 2d 207 (N.D.N.Y. 2009)...................................................................23

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
   590 F. Supp. 2d 625 (S.D.N.Y. 2008)....................................................................13

*Hello I am Elliott v. Sine*,
   Civ. No. 19-6905(PAE), 2020 WL 3619505 (S.D.N.Y. July 2, 2020)....................6

*Heredia v. United States*,
   887 F. Supp. 77 (S.D.N.Y. 1995) ..........................................................................18

*Holiday Inns, Inc. v. 800 Reservation, Inc.*,
   86 F.3d 619 (6th Cir. 1996) .....................................................................................9

*Indiaweekly.com, LLC v. Nehaflix.com, Inc.*,
   596 F. Supp. 2d 497 (D. Conn. 2009) ....................................................................18

*Int'l Info. Sys. Sec. Certification Consortium v. Sec Univ., LLC*,
   823 F.3d 153 (2d Cir. 2016).....................................................................................11

*Isaac v. City of New York*,
   Civ. No. 17-1021(PGG), 2018 WL 1322196 (S.D.N.Y. Mar. 13, 2018) ...............25

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
   58 F.3d 27 (2d Cir. 1995).......................................................................................20

*LBF Travel v. Fareportal, Inc.*,
   Civ. No. 13-9143(LAK)(GWG), 2014 WL 5671853 (S.D.N.Y. Nov. 5, 2014).........8, 11

*M. Shanken Communs., Inc. v. Cigar500.com*,
  Civ. No. 07-7371(JGK), 2008 WL 2696168 (S.D.N.Y. July 7, 2008) ..............................11, 12

*Mashantucket Pequot Tribe v. Redican*,
  403 F. Supp. 2d 184 (D. Conn. 2005)......................................................................................10

*Mellon Bank, N.A. v. United Bank Corp.*,
  31 F.3d 113 (2d Cir. 1994)........................................................................................................17

*Merck & Co. v. Mediplan Health Consulting*,
  425 F. Supp. 2d 402 (S.D.N.Y. 2006)......................................................................................12

*Museum of Modern Art v. MOMACHA IP LLC*,
  339 F. Supp. 3d 361 (S.D.N.Y. 2018)........................................................................................9

*N. Am. Olive Oil Ass'n v. D'Avoilio Inc.*,
  Civ. No. 16-6986, 2020 WL 2079421 (E.D.N.Y. April 30, 2020) ..........................................22

*Nalco Co. v. Chem-Mod*,
  LLC, 883 F.3d 1337 (Fed. Cir. 2018) ........................................................................................5

*Needham & Co., LLC v. Access Staffing, LLC*,
  Civ. No. 15-2487(NRB), 2016 WL 4399288 (S.D.N.Y. Aug. 12, 2016) ..........................18, 19

*In re Nortel Networks Corp. Sec. Litig.*,
  238 F. Supp. 2d 613 (S.D.N.Y. 2003)........................................................................................6

*Nuevo Mundo Holdings v. PriceWaterhouse Coopers LLP*,
  Civ. No. 03-613, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ................................................19

*OBH, Inc. v. Spotlight Magazine, Inc.*,
  86 F. Supp.2d 176 (W.D.N.Y. 2000)......................................................................................8, 9

*Ochre LLC v. Rockwell Architecture Planning & Design*,
  Civ. No. 12-2837(KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012)....................................24

*Paccar Inc. v. TeleScan Techs., LLC*,
  319 F.3d 243 (6th Cir. 2003), *abrogated on other grounds by, KP Permanent
  Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004) ........................................11

*Planned Parenthood Fed. of Am., Inc. v. Bucci*,
  No. 97-629, 1997 WL 133313 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 920 (2d Cir.
  1998) ...........................................................................................................................................8

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
  354 F.3d 1020 (9th Cir. 2004) ................................................................................................11

*Powell v. Ocwen Fin. Corp.*,
   Civ. No. 1:18-cv-01951(VSB)(SDA), 2019 WL 6210810 (S.D.N.Y. Nov. 21,
   2019) ................................................................................................................................25

*Ranta v. City of New York*,
   No. 14-cv-3794, 2018 WL 3127154 (E.D.N.Y. June 26, 2018)................................................7

*Reyna Pasta Bella, LLC v. Visa USA Inc.*,
   442 F.3d 741 (9th Cir. 2006) ................................................................................................6

*Ronzani v. Sanofi S.A.*,
   899 F.2d 195 (2d Cir. 1990)................................................................................................25

*Stewart v. Target Corp.*,
   Civ. No. 11-3557(DLI)(RER), 2013 WL 1182080 (E.D.N.Y. 2013)......................................18

*Stockalert, Inc. v. Nasdaq Stock Mkt.*,
   Civ. No. 95-9335(JFK), 1998 WL 556036 (S.D.N.Y. Aug. 31, 1998)....................................24

*Sun Microsystems, Inc. v. Microsoft Corp.*,
   999 F. Supp. 1301 (N.D. Cal. 1998) .............................................................................16, 21

*TCPIP Holding Co., v. Haar Communs., Inc.*,
   244 F.3d 88 (2d Cir. 2001)....................................................................................................8

*TCPIP Holding Co. v. Haar Communs. Inc.*,
   Civ. No. 99-1825(RCC), 2004 WL 1620950 (S.D.N.Y. July 19, 2004) ..................................7

*Thomas v Westchester Cty Health Care Corp.*,
   232 F. Supp. 2d 273 (S.D.N.Y. 2002)....................................................................................6

*Transamerica Corp. v. Moniker Online Servs., LLC*,
   672 F. Supp. 2d 1353 (S.D. Fla. 2009) ..................................................................................8

*Universal Church, Inc. v. Universal Life Church/ULC Monastery*,
   Civ. No. 14-5213, 2017 WL 3669625 (S.D.N.Y. Aug. 8, 2017)............................................14

*Universal Church, Inc. v. Universal Life Church/ULC Monastery*,
   Civ. No. 14-5213, 2019 WL 4601741 (Sept. 18, 2019)........................................................14

*Verizon Directories Corp. v. Yellow Book USA Inc.*,
   309 F. Supp. 2d 401 (E.D.N.Y. 2004) ............................................................................22, 23

*Victoria's Secret Stores v. Artco Equip. Co.*,
   194 F. Supp. 2d 704 (S.D. Ohio 2002) ................................................................................13

*Vill. Of W. Hampton Dunes v. New York*,
   89 F. Supp. 3d 433 (E.D.N.Y. 2015) .....................................................................................6

*Winer v. Senior Living Guide, Inc.*,
  Civ. No. 12-934, 2013 WL 1217582 (W.D. Pa. Jan. 17, 2013)............................................8, 9

*Winter v. Pinkins*,
  Civ. No. 14-8817(RJS), 2016 WL 1023319 (S.D.N.Y. Mar. 8, 2016) ....................................19

**Statutes**

15 U.S.C. § 1114(1)(a)............................................................................................................7

15 U.S.C. § 1125(a)(1)(A)..................................................................................................16, 19

15 U.S.C. § 1125(d)(1)(B)(1) ...................................................................................................4

ACPA..........................................................................................................................................8

Lanham Act ........................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 8 .....................................................................................................................15

Fed. R. Civ. P. 8(a) ..................................................................................................... *passim*

Fed. R. Civ. P. 9(b) ................................................................................................................18

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 5, 6, 18

Fed. R. Civ. P. 15(a) ...............................................................................................................25

Fed. R. Civ. P. 16 .....................................................................................................................1

Fed. R. Civ. P. 26(f) .................................................................................................................1

Fed. R. Civ. P. 65(d)(2).............................................................................................................5

Plaintiff Soter Technologies, LLC ("Plaintiff" or "Soter"), respectfully submits this memorandum of law in opposition to the motion to dismiss (ECF 57-59) filed by Defendants IP Video Corporation ("IP Video"), A+ Technology & Security Solutions, Inc. ("A Plus"), and Advance Convergence Group, Inc. ("Advance") (collectively, "Defendants").

## PRELIMINARY STATEMENT

It is black letter law that a Plaintiff need not prove its case at the pleading stage. Nevertheless, Defendants' motion demands that Plaintiff prove—rather than plead—all of the elements of its claims a mere six weeks into the case. This is not what the federal rules require.

Worse than Defendants' disregard for the pleading standards in Rule 8(a) and repeated insistence that the Court consider factual issues not amenable to resolution on a motion to dismiss, is their "kitchen sink" approach of cobbling together frivolous arguments—none of which support dismissal of Soter's complaint. After conceding the ownership of a domain name used for the sole purpose of diverting Soter customers to their competing Halo product, and admitting that such diversion presented a "trademark issue"—Defendants now do an about-face and argue that their website diversion was not a trademark use. They further allege that their acts of unfair competition and trademark infringement are protected by "nominative fair use," that a statement in a bid submission that they helped prepare and approved cannot be imputed to them, that they "lack notice" of the allegations against them and that various elements of Soter's claims are inadequately pled. Because Plaintiff's First Amended Complaint established the plausibility of each of Soter's claims, Defendants' motion to dismiss should be denied, a Rule 16 conference scheduled and Defendants ordered to participate in a Rule 26(f) conference so that fact discovery can begin.[1]

---

[1]   While Defendants have not moved for a stay of discovery in this matter, they have refused to participate in a Rule 26(f) conference with Plaintiff on the grounds that a motion to dismiss has been filed. Despite Plaintiff's citation of controlling authority showing the impropriety of Defendants' position, Defendants have persisted in their position.

## PROCEDURAL AND FACTUAL BACKGROUND

Soter filed this action on June 30, 2020 asserting claims including cybersquatting, trademark infringement, unfair competition and product disparagement.  (ECF 1)  Soter's First Amended Complaint ("FAC"), the operative pleading, was filed on July 6, 2020.  (ECF 35)

Soter owns U.S. Trademark Registration No. 6,057,746 for the FLYSENSE trademark, which protects FlySense® - the world's first vape detecting sensor device.  (*Id.* ¶ 35; ECF 35-1)  Soter has used the FlySense® Mark continuously in interstate commerce to identify and distinguish its high quality vape detecting sensor device.  (FAC ¶ 28)  It has extensively used, advertised and promoted the FlySense® Mark in the United States in connection with Soter vape detecting sensor devices and has never licensed or assigned any rights in the mark to any of the Defendants.  (*Id.* ¶¶ 30-32)  Soter advertises FlySense® on the site www.flysense.net.  (*Id.* ¶ 33)

The Defendants conspire with one another to make, sell, offer for sale and distribute the Halo Smart Sensor ("Halo Device"), the only sensor device on the market that competes with Plaintiff's FlySense® device.  (*Id.* ¶ 8)  All three defendants advertise the Halo Device, share offices, resources and executives (*id*. ¶¶ 9-12), and through their common principal, Mr. David Antar, acquired actual knowledge of Soter's superior rights in and to the FlySense® Mark in or about January 2018.  (FAC ¶¶ 39, 80, 106-109)  Nevertheless, and having specific intent to take business away from Soter—from approximately September 9, 2019 to July 1, 2020 (the "Period of Diversion"), Defendants used Soter's FLYSENSE® mark in the domain name www.flysense.com ("Infringing Domain Name"), in bad faith, to deliberately confuse and divert potential FlySense® customers to their website ipvideocorp.com, where they depicted their competing Halo Device as shown below:



(*Id.* ¶¶ 34-37, 61, 64, 81, 111)[2]  The active diversion of potential FlySense® customers was not Defendants' only act of unfair competition. They also made false statements about FlySense® and Halo's compatibility with Soter's FlySense® platform.  (*Id.* ¶ 51)  IP Video falsely represented through an agent ACP, that the Halo Device was compatible with FlySense®'s platform, causing Soter to lose a sale of over $43,000.  (*Id.* ¶¶ 52-53)  Defendants also told a school on the West Coast that FlySense® did not work, had too many false positives, and was embroiled in litigation. (*Id.* ¶ 116)  Soter alleged that Defendants' trademark infringement and false statements about FlySense® and FlySense®'s proprietary platform amounted to unfair competition under federal and state law.  (FAC ¶¶ 2, 89-93, 109-112; ECF 10 at 4-5, 7; ECF 12 ¶¶ 4, 40, 59-61)  In addition to unquantifiable loss of market share and business opportunities (FAC ¶ 47), Soter alleged that it has suffered damages of at least 5 million dollars, including more than two million in lost sales; (*Id.* ¶¶ 43-44); about one million in price erosion (*Id.* ¶ 45); the value of its two million dollar investment in FlySense® (ECF 12 ¶ 79) and lost secondary educational product sales.  (FAC ¶ 46)

---

2    As Soter alleged, pointing the Infringing Domain Name to an IP Video website which advertised the Halo Device was likely to (and did in fact) deceive customers, the public and the trade into believing that there was a connection, association, affiliation, or sponsorship between FlySense® and Halo.  (FAC ¶¶ 40, 76-78, 91-93, 100 & 110)  These persons include a reseller and the President of Convention Components, Inc.  (ECF 12 ¶¶ 65-67)

On July 2, 2020, the Court held a conference with all parties in connection with Plaintiff's motion for a TRO.  (ECF 21)  During this conference, Defendants made two critical admissions. First, Defendants admitted to their ownership and use of the Infringing Domain Name, stating that:

> "[O]ur client has . . . decommissioned the www.FlySense.com URL so that it **no longer . . . redirects anybody to our client's website**."

> [Defendants have] owned the domain for – I don't have the precise number of months . . . Mr. Schwimmer can address this, **he's going to be dealing with the trademark issues** – is that he acquired the domain name approximately a month before plaintiff filed for their trademark registration on the FlySense mark.

(Ex. A, 7.2.2020 Trans. at 4:13-5:4) (emphasis added).[3] Second, Defendants admitted that their website diversion was a "trademark issue[.]"  (Ex. A at 4:23-5:1)  Soter reiterated during the conference that its unfair competition claims were based on Defendants' website diversion and false statements related to both FlySense® and Halo.  (Ex. A at 9:1-10:4)  After hearing from all parties, the Court granted a temporary restraining order,[4] restraining Defendants from:

1.  Resuming operation of the FlySense Domain Name; and

2.  Stating that the HALO Device is compatible with the FlySense proprietary software platform.

(ECF 28 at 2)  The Court found that Soter "made a showing of [Defendants'] bad faith intent to profit from the FlySense Mark[,]"[5] that the "balance of the hardships and the public interest factors [] favor[ed] Plaintiff, who ha[d] made a showing that the purported infringement of their FLYSENSE trademark has been costly," and that Soter made "a showing of likelihood of success of the claim that the [compatibility] statement . . . constitute[d] unfair competition[.]"  (*Id*. at 1-2)

---

[3]   Soter later discovered that the "he" referred to in this passage is Mr. David Antar, principal of all named Defendants in this action, thereby implicating each named defendant in at least Soter's claims for cybersquatting, unfair competition and trademark infringement.

[4]   Defendants claim that this Court denied an *ex parte* TRO.  (ECF 58 at 2)  However the true facts are that the Court denied relief on an *ex parte* basis and instead heard from all parties before granting a TRO to Soter.  (ECF 28)

[5]   Soter had based its allegation of bad faith on the factors enumerated in 15 U.S.C. § 1125(d)(1)(B)(1). *See* FAC ¶¶ 58-64; *see also* ECF 10 at 6-7.

On July 15, 2020, the parties agreed to convert Restraint 1 from a TRO to a preliminary injunction.  (ECF 46 at 1)  On July 20, 2020, the Court ordered, based on that agreement, that:

> 1.    Defendants are preliminarily enjoined from resuming operation of the FlySense Domain name pending a resolution of the case on the merits.  This injunction applies to the Defendants' officers, agents, servants, employees, and attorneys, and other persons in active concert or participation with such persons.  See Fed. R. Civ. P. 65(d)(2).

(ECF 51 at 2)  In its July 20 Order, the Court further permitted both sides to take limited expedited discovery.  (*Id.* at 3)  After Defendants produced documents and represented in an interrogatory response that there were no (further) instances in which Defendants or anyone on their behalf including distributors referenced Halo's purported compatibility with FlySense® or the FlySense® platform, Soter agreed to withdraw its request to convert TRO Restraint 2 to a preliminary injunction.  (ECF 61)  On July 31, Defendants moved to dismiss Plaintiff's claims for (i) trademark infringement under federal and state law; (ii) unfair competition under federal and state law; and (iii) product disparagement.  Critically, Defendants did not challenge the facts alleged by Soter as to Defendants' unlawful actions *vis a vis* www.flysense.com during the Period of Diversion, nor have they disputed stating to at least one person that FlySense® does not work, has too many false positives or is embroiled in litigation, at a time when FlySense® was not involved in any litigation.

## LEGAL STANDARD

A plaintiff "need not prove its case at the pleading stage."  *Nalco Co. v. Chem-Mod,* LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018); *Capitol Records, Inc. v. City Hall Records, Inc.,* Civ. No. 07-6488(LTS)(KNF), 2008 WL 2811481, at *6 (S.D.N.Y. July 18, 2008) ("At the pleading stage, *no obligation exists to prove anything*, only to allege 'enough facts to state a claim to relief that is plausible on its face.'") (emphasis added) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  Instead, "[w]hen considering a motion to dismiss pursuant to Rule 12(b)(6), the

district court . . . is required to accept as true the facts alleged in the complaint, consider those in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).  When evaluating such motion, a court may consider "the complaint, any written instrument attached to the complaint as exhibits, or any documents [integral to or] incorporated in the complaint by reference[,]" and "any document on which the Complaint heavily relies, and anything of which judicial notice may be taken." *Vill. Of W. Hampton Dunes v. New York*, 89 F. Supp. 3d 433, 442 (E.D.N.Y. 2015) (citations omitted).  This includes hearing transcripts and other court filings.  *See, e.g., Reyna Pasta Bella, LLC v. Visa USA Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006) (hearing transcript and briefs filed); *Thomas v Westchester Cty Health Care Corp.*, 232 F. Supp. 2d 273, 277 (S.D.N.Y. 2002) (hearing transcript); *Hello I am Elliott v. Sine*, Civ. No. 19-6905(PAE), 2020 WL 3619505, at *3 n.3 (S.D.N.Y. July 2, 2020) (emails).

A claim will survive a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) where the plaintiff alleges facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A claim meets this standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "'<u>A pleading is not a trial</u> and plaintiffs are not required to marshal their evidence and sustain a verdict at this stage.'"  *In re Nortel Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613, 621 (S.D.N.Y. 2003) (emphasis added) (citations omitted).  At the pleading stage, a plaintiff need only "nudge[] [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## ARGUMENT

### I.     The Court Should Not Dismiss Soter's Trademark Infringement Claims

#### A.     Defendants' Website Diversion Was A "Use in Commerce"

Defendants have admitted that their use of Soter's FLYSENSE® mark in commerce to divert those looking for Soter's FlySense® product to their Halo Device presents a "trademark issue." (Ex. A at 4:23-5:1)  Having made this critical admission, Defendants are estopped from now arguing that such use was <u>not</u> a trademark use.  *See Ranta v. City of New York*, No. 14-cv-3794, 2018 WL 3127154, *3 (E.D.N.Y. June 26, 2018) (under the doctrine of judicial estoppel, "a party is precluded from inequitably adopting a position…inconsistent with an earlier assumed position in the same proceeding.") (internal citations omitted).  (ECF 58 at 1, 3, 5-7)

Using a trademark as Defendants used FLYSENSE® here—to advertise, promote, sell and offer for sale their competing Halo Device in commerce (which among other things, deprived Soter of the exclusive ability to advertise and offer for sale its own product on the internet) is "use" under the Lanham Act.  *See TCPIP Holding Co. v. Haar Communs. Inc.*, Civ. No. 99-1825(RCC), 2004 WL 1620950, at *6 (S.D.N.Y. July 19, 2004) (citing 15 U.S.C. § 1114(1)(a)).  Because Defendants used Soter's FlySense® mark to <u>offer for sale, sell, promote and advertise</u> their Halo product in a manner that was likely to, and did in fact, cause actual confusion (FAC ¶¶ 34-37, 40, 75-78, 89-93; *see* ECF 12 ¶ 55), impairing Soter's ability to exclusively promote its own product, there is no question that Defendants have "used" the mark in commerce under the Lanham Act.

Defendants' position that cybersquatting cannot also constitute trademark infringement and unfair competition was rejected in *TCPIP Holding Co*., 2004 WL 1620950, at *1 (ECF 58 at 7).  There, the owner of "The Children's Place" trademark sued defendant claiming that domain names including "thechildrensplace.com," childrenspace.com, and "thechildrenplaces.com" infringed its trademark.  Far from finding that these domain names did not constitute "use"—<u>the</u>

Court entered summary judgment that such use amounted to <u>cybersquatting, trademark infringement and unfair competition</u>.  *See id*. at \*5-6.[6]  Indeed, the Second Circuit, in reviewing an earlier preliminary injunction, affirmed that the domain names would likely constitute <u>trademark infringement</u>.[7]  Many other courts have found "use" on analogous facts.  *See CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1095, 1106 (D. Colo. 2014) (defendant's use of the CrossFit trademark in domain name <u>www.crossfitnutrition.com</u> was not only "trademark infringement" but also "cyberpiracy" under the ACPA); *Winer v. Senior Living Guide, Inc*., Civ. No. 12-934, 2013 WL 1217582, at \*10 (W.D. Pa. Jan. 17, 2013) (defendant's use of website to divert customers away from plaintiff's website to Amazon.com, where they could buy competing products satisfied the "use" requirement.); *Transamerica Corp. v. Moniker Online Servs., LLC*, 672 F. Supp. 2d 1353, 1362 (S.D. Fla. 2009) (use of mark "to draw consumers to a [] website not belonging to the trademark holder constitutes use in commerce"); *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp.2d 176, 191 (W.D.N.Y. 2000) (using "The Buffalo News" trademark in the domain name "thebuffalonews.com" constituted trademark infringement); *Planned Parenthood Fed. of Am., Inc. v. Bucci*, No. 97-629, 1997 WL 133313, at \*3, 12 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998) (enjoining use of plannedparenthood.com as trademark infringement).[8]  These cases show that contrary to Defendants' arguments (ECF 58 at 1, 22), Defendants <u>did</u> improperly use FLYSENSE and it is they who "misunderstand" trademark law.

---

[6]    Because Soter's unfair competition claim is grounded on Defendants' improper use of FLYSENSE, website diversion <u>and</u> actionable false statements, it does not constitute an "attempt to foreclose competition[.]" (ECF 58 at 1)

[7]    In February 2001, the Second Circuit affirmed the injunction as to nine specific domain names, *see TCPIP Holding Co.*, *v. Haar Communs., Inc*., 244 F.3d 88, 101 n.11 (2d Cir. 2001), which are analogous to flysense.com.

[8]    *Cf. LBF Travel v. Fareportal, Inc*., Civ. No. 13-9143(LAK)(GWG), 2014 WL 5671853, at \*8 (S.D.N.Y. Nov. 5, 2014) (purchase of plaintiff's trademarks as keywords "which led to <u>defendants' advertisements</u> being displayed on the search results pages for [plaintiff's] keywords in such a way as to confuse online customers" amounted to use) (emphasis added); *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 158 (E.D.N.Y. 2011) ("use of mark to purchase AdWords to advertise its [own] products for sale on the Internet constitute[d] 'use in commerce'").

In *OBH*, the court found "use in commerce" for three reasons—all of which apply here. First, the defendants "connect[ed] users to defendants' [] web site . . . which they operate[d] for commercial purposes, *i.e.*, advertising apartments for rent."  86 F. Supp. 2d at 185-86.  Second, "the national, and even international, nature of the Internet itself ma[de] defendants' use of plaintiffs' trademark as a domain name a 'use in commerce' for purposes of the Lanham Act."  *Id.* at 186 (citations omitted).  Finally, defendants' use of plaintiffs' "The Buffalo News" mark "affect[ed] plaintiffs' ability to offer their [own] services in commerce."  *Id.* (citations omitted).

In a desperate attempt to overcome one of these many authorities, *OBH*, Defendants argue that *OBH* should be disregarded because it predated *1-800 Contacts*.[9]  (ECF 58 at 7, citing *1-800 Contacts Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005)).  But *1-800 Contacts* is not on point.[10]  In *1-800 Contacts*, the court specifically found that the defendant (not a competitor of the plaintiff), was <u>not</u> "divert[ing] or misdirect[ing] C-users away from 1-800's website, or alter[ing] in any way the results a C-user w[ould] obtain when searching with the 1-800 trademark . . ."  *Id.* at 411.  Directly contrary to the facts in *1-800 Contacts*, in this case the Defendants (who do compete with Soter) <u>did</u> use the FLYSENSE® mark to divert and misdirect Soter customers away from Soter's product and <u>did</u> alter the results one would obtain when searching for Soter's FLYSENSE® product.  Indeed, the very product purchased by Mr. David Antar was called "shortener-redirect."  (Ex. B at GD 6-7)[11]  *1-800 Contacts* is also distinguishable because there,

---

[9]  Contrary to Defendants' assertion (ECF 58 at 7), *OBH* continues to be cited positively by courts.  *See Museum of Modern Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361, 373 (S.D.N.Y. 2018); *Winer*, 2013 WL 1217582, at *10.

[10]  *Holiday Inns, Inc. v. 800 Reservation, Inc.* is even less on point.  (ECF 58 at 6, citing 86 F.3d 619 (6th Cir. 1996)).  There, the defendants "never advertised . . . anything to do with Holiday Inns" or caused confusion, *id*. at 623-24, unlike the Defendants here who used FLYSENSE® to advertise their competing product, which did cause confusion.

[11]  Thus, Defendants have performed the very acts found missing from *1-800 Contacts*, as they have admitted to using the domain name to divert customers away from Soter.  Under the *1-800 Contacts* analysis, this clearly amounts to trademark infringement and is not, as Defendants' claim, "passive use of a trademark."  (ECF 58 at 5-6)

the computer user installed software that caused the pop-up advertisements.  *See id.* at 411.[12]  Here, persons searching for FlySense® on the internet never installed anything on their computers.

### B.      Defendants Cannot Claim Nominative Fair Use As a Defense

Defendants argue that referring to FlySense® in the "compatibility statement" was not unfair competition or trademark infringement because it was "nominative fair use."  (ECF 58 at 17)  As an initial matter, Defendants wrongly suggest that Plaintiff's unfair competition claims are based solely on Defendants' bad faith cybersquatting.  (*Id.* at 5)  Instead, Soter's unfair competition claims are supported by <u>multiple acts</u> including (i) Defendants' use of Soter's registered trademark in the Infringing Domain Name to advertise their competing product; (ii) Defendants' false statements that FlySense® does not work, (iii) is associated with too many false positives, (iv) is embroiled in litigation, and (v) that Halo is compatible with the FlySense® platform.  (Ex. A at 9:1-10:4)  As Soter alleged in its brief in support of a TRO:

> In addition to using the Infringing Domain Name to redirect viewers looking for FlySense® to an IP Video Corporation website, Defendants have performed additional acts of unfair competition . . . Defendants have falsely stated that FlySense® does not work, leads to many false positives and is embroiled in litigation, which it is not . . . IP Video Corporation has also falsely stated . . . that [] HALO . . . is compatible with FlySense® software, which it is not.

(ECF 10 at 4-5) (citing ECF 12 ¶¶ 4, 40, 60-61) (FAC ¶ 2)  Because Soter never alleged that Defendants' compatibility statement infringed Plaintiff's trademark, Defendants' "nominative fair use" argument misses the mark.[13]  Under the doctrine of nominative fair use, one may use another's trademark as a reference to describe the other product or compare it to their own.  To establish

---

[12]   Defendants' cited *Mashantucket Pequot Tribe v. Redican*, 403 F. Supp. 2d 184 (D. Conn. 2005) is also not on point.  There, the defendant was not a competing casino, and did not use the plaintiff's FOXWOODS mark to advertise a competing casino, like the Defendants used Plaintiff's FLYSENSE mark to advertise their competing product here.

[13]   Because Soter does not allege that the compatibility statement infringed its mark, Soter is not engaging in "misuse of a trademark" (ECF 58 at 13 n.9) and the nominative fair use doctrine does not apply.  (*Id.* at 17-18, 22-23)

a nominative fair use defense, Defendants must prove that: (1) the product or service must be one not readily identifiable without use of the mark; (2) the defendant used only so much of the plaintiff's mark as was necessary to identify the product or service; and (3) the defendant did nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.  *See Int'l Info. Sys. Sec. Certification Consortium v. Sec Univ., LLC*, 823 F.3d 153, 168 (2d Cir. 2016); *M. Shanken Communs., Inc. v. Cigar500.com*, Civ. No. 07-7371(JGK), 2008 WL 2696168, at *11 (S.D.N.Y. July 7, 2008); *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004)[14] (nominative fair use could not be claimed).

    To the extent that Defendants claim "nominative fair use" as a defense to trademark infringement, they cannot satisfy any of these three elements.  First, it was not necessary for Defendants to use Soter's FLYSENSE® mark in a domain name to identify Defendants' Halo products.  *See Playboy Enters., Inc.*, 354 F.3d at 1025.  Second, they used more of Plaintiff's mark than necessary in the domain name.  *See Int'l Info. Sys. Sec. Certification Consortium*, citing *Paccar Inc. v. TeleScan Techs., LLC*, 319 F.3d 243, 256 (6th Cir. 2003), *abrogated on other grounds by, KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004). Third, by using the FlySense® mark to revert to their own website, they did imply sponsorship of Soter, the trademark owner.  *See Audi AG v. Shokan Coachworks, Inc.*, 592 F. Supp. 2d 246, 270 (N.D.N.Y. 2008) (refusing to find nominal fair use defense applicable where "each of the alleged infringing uses could imply sponsorship by Plaintiffs of Defendants.")

    To the extent Defendants suggest that "nominative fair use" insulates them from liability for unfair competition in connection with their compatibility statement, that too is incorrect because nominative fair use is not a defense to unfair competition.  Finally, contrary to Defendants'

---

[14]   *Playboy Enters., Inc.* is cited positively in this Circuit.  *See*, *e.g.*, *LBF Travel*, 2014 WL 5671853, at *7.

claim (ECF 58 at 17), "nominative fair use" involves questions of law and fact, and is not suitable for resolution on a motion to dismiss. *See M. Shanken Communs., Inc.*, 2008 WL 2696168, at *11; *Merck & Co. v. Mediplan Health Consulting*, 425 F. Supp. 2d 402, 414 (S.D.N.Y. 2006).

## C. Defendants' Violations of Trademark Laws Also Violated Unfair Competition Laws

Defendants next argue that Plaintiff cannot rely on initial interest confusion to support its trademark and unfair competition claims because the theory is wholly implausible and "significant time must elapse" between potential consumers being improperly diverted to IP Video's site and "a purchasing decision." (ECF 58 at 7-8) Here again, how much time elapses before a purchasing decision is made is yet another fact question not suitable for a motion to dismiss. Moreover, Soter did not rely on this theory, and Soter's claim would succeed even if it were to rely on this theory.

The initial interest doctrine is "a type of pre-sale confusion" which "occurs when 'potential consumers initially are attracted to the junior user's mark by virtue of its similarity to the senior user's mark, even though these <u>consumers are not actually confused at the time of purchase</u>." *Alzheimer's Disease & Related Disorders Ass'n v. Alzheimer's Found. of Am., Inc*., 307 F. Supp. 3d 260, 286 (S.D.N.Y. 2018) (emphasis added). However, Soter never alleged that consumers were initially confused and then not confused later on. (FAC ¶¶ 76-78, 91-93, 100, 110) Instead, Soter alleged that "purchasers bought HALO devices thinking they were buying FlySense® devices, [and] later approach[ed Soter] to replace such devices." (ECF 12 ¶ 55) In other words, purchasers remained confused even at the time of purchase. Thus, the circumstances presented here are far different from mere instances of initial interest confusion. Rather, they show actual confusion occurring under regular marketplace conditions. Moreover, Soter could rely on the doctrine due to the "bait and switch" activities Defendants engaged in. As one court has explained:

> The task of distinguishing between situations that are and are not
> actionable as initial interest confusion may be best illustrated by two

> scenarios.  **The first is a pure bait and switch scenario, which is clearly actionable.** . . .
>
> By contrast . . . if Pepsi were to purchase the keyword 'Coca-Cola' and then publish an ad with the headline 'Try Pepsi - It Is Better than Coca-Cola,' it would be the rare consumer confused by the source of the advertisement. The consumer searching for "Coca-Cola" may have been diverted, but she has not been confused or misled. **The _sine qua non_ of trademark infringement is consumer confusion caused by the infringing behavior . . . .**

_Alzheimer's Disease & Related Disorders,_ 307 F. Supp. 3d at 286-87 (emphasis added).  Applying this analysis, Defendants' diversion of those looking for FlySense® to their Halo Device was an actionable "bait and switch," which led to actual confusion by multiple entities.  _See Victoria's Secret Stores v. Artco Equip. Co._, 194 F. Supp. 2d 704 (S.D. Ohio 2002) (defendants' use of VICTORIA'S SECRET mark to 'bait and switch' Internet users who were looking for plaintiffs' products constituted actions prohibited by the Lanham Act.)  As detailed in the FAC and Peterson declaration, Defendants' use of the FLYSENSE® mark without Soter's permission caused actual confusion about whether Defendants are associated with Soter and/or FlySense®, including a reseller and a corporate executive.  (FAC ¶¶ 76-78, 91-93, 100, 110-112) (ECF 12 ¶¶ 55 & 65-67)  Because Defendants caused such actual confusion, Defendants' cited _Gottlieb Dev. LLC v. Paramount Pictures Corp._, 590 F. Supp. 2d 625 (S.D.N.Y. 2008) is inapposite.  (ECF 58 at 8)  That case only involved a theoretical possibility of confusion—not actual confusion as pled here.[15]

Regardless, Soter is not required to disclose its ultimate expert's opinion about why Defendants infringe in a pleading and Defendants' cited cases are inapposite. (ECF 58 at 8, citing _Ascentive, LLC v. Opinion Corp._, 842 F. Supp. 2d 450 (S.D.N.Y. 2011) (involving a preliminary injunction) and _Universal Church, Inc. v. Universal Life Church/ULC Monastery_, Civ. No. 14-

---

[15]   Defendants discount these instances of confusion without any supporting authority.  Further, Defendants do not explain why a SymptomSense™ customer could not also be a FlySense® customer.

5213, 2017 WL 3669625 (S.D.N.Y. Aug. 8, 2017) (involving summary judgment)).  Moreover, in *Ascentive, LLC*, the parties did not compete and uncertainty existed concerning the existence of an intent to confuse as to source.  *See Ascentive, LLC*, 842 F. Supp. 2d at 461-62.  Here, in contrast, Defendants purchased the Infringing Domain Name having the specific intent to confuse potential purchasers.  (FAC ¶¶ 57-64, 75-78, 89-93, 100, 110-112; ECF 10 at 6-7)  Defendants' cited *Universal Church, Inc*. is also inapposite.  There, the court's decision was issued three years into the case after the close of fact discovery[16]—unlike this case, which was filed only six weeks ago.  Further, the trademark at issue in *Universal Church, Inc*. was found to be generic and not distinctive, *Universal Church, Inc*., 2017 WL 3669625, at *7, unlike Soter's FLYSENSE® mark here which is fanciful and inherently distinctive.  (FAC ¶ 55; ECF 10 at 5)  Further, in *Universal Church, Inc*., there was "little to no[]" evidence of actual confusion whereas Soter has alleged actual confusion in this case.  (FAC ¶ 76-78, 91-93, 100, 110; *see also* ECF 12 ¶¶ 55, 66-68)

## II.    The Court Should Not Dismiss Soter's Unfair Competition Claims

### A.    ACP Acted As IP Video's Agent In Making The "Compatibility" Statement

Defendants argue that Soter's 121-paragraph FAC, which parroted statements made in a 25 page memorandum and 95-paragraph affidavit was a "shotgun pleading."  (ECF 58 at 10)  But in fact, Soter's FAC was the opposite of "shotgun pleading" and Defendants' cited *In re Ford Fusion & C-Max Fuel Econ. Litig*., No. 13-2450, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015) is not on point.  There, the pleading evidenced an "utter disrespect for Rule 8 of the Federal Rules of Civil Procedure," and pled a claim for unjust enrichment that did not specify which state's law

---

[16]   *See Universal Church, Inc. v. Universal Life Church/ULC Monastery*, Civ. No. 14-5213, 2019 WL 4601741, at *2 (S.D.N.Y. Sept. 18, 2019).

applied.  *Id*. at *35, 38.  Here, as explained herein, Soter exceeded the standards set forth in Rule 8(a) and specified that New York law governed all its common law claims.  (FAC Counts IV-VI)

Next Defendants claim that Soter failed to give sufficient notice pleading of any cause of action related to the alleged compatibility statement and failed to tie Defendants' statement of compatibility to Mission to any of Soter's claims.  (ECF No. 58 at 9-10)  This too is incorrect.  As Soter explained to Defendants' counsel on July 12, 2020, Plaintiff alleged in its FAC that:

> 51. Defendant IP Video Corporation has made other false statements directly leading Soter to lose sales *for which both Plaintiff and Defendant IP Video Corporation were competing.*
>
> 52. For example, IP Video Corporation recently represented to the Mission Consolidated Independent School District School . . . that Defendants' . . . HALO Device is compatible with FlySense®'s platform, *causing Soter to lose a sale of over $43,000 . . .*
>
> 53. Defendants' competing HALO Device is not compatible with FlySense® software or FlySense's proprietary platform.

(FAC ¶¶ 51-53) (emphasis added)  Paragraph 87 in Soter's <u>federal</u> unfair competition claim re-alleged and incorporated by reference all of these allegations, while paragraph 88 stated that "Defendants' acts and conduct complained of herein constitute unfair competition[.]"  Paragraph 105 then incorporated these allegations into Soter's <u>state</u> unfair competition claim.   These allegations provided adequate notice and were repeated in Soter's brief and related declaration:

> In addition to using the Infringing Domain Name to redirect viewers looking for FlySense® to an IP Video Corporation website, **Defendants have performed additional acts of unfair competition** . . . Defendants have falsely stated that FlySense® does not work, leads to many false positives and is embroiled in litigation, which it is not . . . **IP Video Corporation has also falsely stated during public contract bids that the HALO device is compatible with FlySense® software, which it is not.**

(ECF 10 at 4-5) (citing ECF 12 ¶¶ 4, 40, 60-61) (emphasis added) (*see also* FAC ¶ 2)

Soter's unfair competition allegations also satisfied section 1125(a)(1)(A) because Soter alleged that Defendants' statements were "false or misleading description[s] of fact or false or misleading representation[s] of fact . . . likely to cause confusion, or to cause mistake, or to deceive as to the . . . approval of his or her goods, services, or commercial activities by another person." *See Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F. Supp. 1301, 1311 (N.D. Cal. 1998) (injunction granted where defendant "falsely implie[d] that its software products implement the JAVA Technology in a manner approved by Sun"). Defendants' false statements also constitute unfair competition under state law because they misappropriated for Defendants' own commercial advantage, benefits associated only with FlySense,® which belong only to Soter, in bad faith.

Next Defendants claim that Soter's state law claims should be dismissed because Soter did not allege that the compatibility statement was made in bad faith. (ECF 58 at 18) But here again, Soter did not allege that the compatibility statement infringed its trademark, Soter's unfair competition claims were based upon multiple false statements and website diversion, and Soter did allege bad faith. *See* FAC ¶ 111 (alleging bad faith in support of state law unfair competition claim). The Court itself found that Plaintiff made a showing of a bad faith intent to profit from the FlySense® Mark. (ECF 28) Bad faith was further parroted in Soter's moving brief, which stated:

> Further, **while unfair competition under New York law requires an additional showing of bad faith, "where [a] defendant is aware of the . . . plaintiff's mark and proceeds to use it . . . a finding of 'bad faith' has been inferred." . . .** As explained by . . .Soter's CEO, Defendants have had knowledge of Soter's FlySense® mark since at least January 2018 . . . [nevertheless] [a]t least Defendant IP Video Corporation [] used a domain name that is identical and confusingly similar to Soter's registered trademark without Soter's consent, to divert sales to itself, in connection with the sale, offering for sale, distribution, and/or advertising of the HALO, in a manner that is likely to cause confusion.

(ECF 10 at 8, citing Compl. ¶¶ 65-74); (emphasis added); *see Dentsply Sirona, Inc. v. Dental Brands for Less LLC*, No. 15 Civ. 8775 (LGS), 2020 WL 1643891, at *5 (S.D.N.Y. April 2, 2020)

(one "exhibits bad faith by 'adopting [plaintiff's] mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product.'")

### B.    Defendant' Motion Raises Factual Issues Not Amenable to Resolution on a Motion to Dismiss

Defendants make a number of fact-based arguments that are not suitable for resolution on a motion to dismiss.  First, their arguments regarding the meaning of statements in the Mission bid request and submission (ECF 58 at 14-16) highlight ambiguities which raise questions of fact.  *See Mellon Bank, N.A. v. United Bank Corp*., 31 F.3d 113, 116 (2d Cir. 1994) ("when a contract is ambiguous, its interpretation becomes a question of fact").  Likewise, Defendants' interpretation of and reliance upon Texas law present facts far from integral to Plaintiff's FAC and not properly before this Court on a motion under 12(b)(6).[17]

Defendants further argue that Mission did not require a "compatibility statement;" that the bid permitted "district approved equals;" that Mission was "not confused" and in fact considered the Halo Device to be a "district approved equal."  (ECF No. 58 at 9, 12, 14-16, 22)  Here again, what was in the mind of Mission's decision-makers presents a question of fact.  Moreover, Defendants' motion highlights two alternative interpretations of Mission's specifications.  Such competing interpretations, along with Defendants' demand that "context" be considered (*id.* at 2 & 14-15)—highlight a gating ambiguity not subject to resolution on a motion to dismiss.  *See Bison Capital Corp. v. ATP Oil & Gas Corp*., 2010 WL 2697121, at *8 (S.D.N.Y. June 24, 2010) ("[w]here . . . alternative, reasonable interpretations of a contract term render[] it ambiguous, the issue should be submitted to the trier of fact and is not suitable for disposition on a motion to dismiss.") (citations omitted).  Defendants further claim that they never made any compatibility

---

[17]    Further, the opinion cited at ECF 59-2 interprets Texas law, but N.Y. law governs Plaintiff's state law claims.

statement because the bid was submitted by ACP, a reseller that is not "an agent of any Defendant," and "Soter did not allege any agency between ACP and IP Video Corporation such that IP Video would be liable for ACP's actions."  (ECF No. 58 at 9-11, 23)  Defendants are wrong.

First, there is no requirement that a Lanham Act claim be pled with particularity under Federal Rule of Civil Procedure 9(b).  *See Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F. Supp. 2d 497, 502 (D. Conn. 2009).  Second, here again, the existence of an agency relationship is a factual issue that cannot be adjudicated on a Rule 12(b)(6) motion.  *See Stewart v. Target Corp.*, Civ. No. 11-3557(DLI)(RER), 2013 WL 1182080, at *4 (E.D.N.Y. 2013) ("whether an agency relationship exists is highly factual"); *Heredia v. United States*, 887 F. Supp. 77, 80 (S.D.N.Y. 1995) ("'the existence and scope of [alleged] agency'" are issues of fact and are not properly the basis of a motion to dismiss.") (citations omitted)  Third, Soter's FAC was filed before discovery began and when information concerning IP Video and ACP's relationship was exclusively in the possession of Defendants.  *See Needham & Co., LLC v. Access Staffing, LLC*, Civ. No. 15-2487(NRB), 2016 WL 4399288, at *15 (S.D.N.Y. Aug. 12, 2016).  Thus, contrary to Defendants' suggestion (ECF 58 at 10), ACP's relationship with IP Video was <u>not</u> "clearly known to Plaintiff" at the time the FAC was filed.  Nevertheless, if the Court were to find that more facts related to agency must be pled, Soter now has additional facts to plead as expedited discovery revealed that Mr. Rice, IP Video's Director of Business Development, asked ACP to offer Halo to Mission on its behalf (IPV 87, 110, 118, 123); ACP worked with Mr. Rice on the submission and secured language from IP Video to include in that submission (IPV 45, 52-53, 58, 102, 127); and IP Video approved the final submission. (IPV 69)[18]  Thus, "any amended pleading of agency would

---

[18]   Defendants cannot be heard to challenge the submission and consideration of this evidence as Defendants opened the door to this information by arguing that any amendment would be futile and fail as a matter of law.  (ECF 58 at 2, 22-23)  Further, Defendants' claim that expedited discovery showed no support for Plaintiff's unfair competition claim is incorrect, *id*. at 23, as documents produced demonstrated both collaboration <u>and</u> agency between IP Video and ACP.

[not] be conclusory" (ECF 58 at 10)[19] and leave to amend should be granted where a plaintiff possesses additional facts that would cure any purported defects. *See Winter v. Pinkins*, Civ. No. 14-8817(RJS), 2016 WL 1023319, at *8 (S.D.N.Y. Mar. 8, 2016) (citations omitted).

Defendants next argue that the compatibility statement cannot support Plaintiff's unfair competition claims because Plaintiff failed to plead any confusion arising from the alleged compatibility statement.  (ECF No. 58 at 11-12)  Here, Defendants misstate the law.

Under 15 U.S.C. § 1125(a)(1)(A), an act constitutes unfair competition if is causes, or is likely to cause confusion, [or] **mistake, and/or deception** about whether Defendants' products originate with, and/or are sponsored or **approved by**, and/or offered under a license from, Soter. *Id.* (emphasis added) (FAC ¶ 93)  Defendants' compatibility statement <u>did</u> cause mistake and deception about whether Halo was associated with or approved by Soter, and deceived Mission into believing that Halo devices can be monitored through Soter's proprietary platform, which they cannot be. (ECF 12 ¶ 40)  Further, Soter did allege confusion stemming from Defendants' other acts of unfair competition, including their use of FLYSENSE® during the Period of Diversion. *See* FAC ¶ 110 (alleging, in support of its state unfair competition claim, that Defendants' use of "the Infringing Domain Name. . . <u>deliberately confused the public</u>"); FAC ¶¶ 91-93 (alleging, in support of its federal unfair competition claim, that Defendants' website diversion caused confusion).  Because Soter alleged that Defendants caused a likelihood of confusion as to source (FAC ¶¶ 91-93 & 110), Defendants' arguments to the contrary fall short.  (ECF 58 at 11 & n.7)

While Defendants cite *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995) (ECF 58 at 12 n.8) for the proposition that a New York unfair competition claim

---

[19]   Because the facts now in Soter's possession stemming from expedited discovery fully substantiate pleading a principal/agent relationship, the facts here are distinguishable from *Nuevo Mundo Holdings v. PriceWaterhouse Coopers LLP*, Civ. No. 03-613, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004).  There, a proposed further amended complaint submitted to the Court "still suffer[ed] from the deficiencies inherent in the[] original." *Id.* at *24.

must include allegations of confusion, Plaintiff did allege such confusion.  *See* FAC ¶¶ 110-112 (alleging that "Defendants' acts in using the Infringing Domain Name to divert potential FlySense® customers to their own website offering their competing Halo Device, <u>deliberately</u> <u>confused the public and deliberately attempted to mislead potential customers</u>") (emphasis added). Because Soter properly alleged actual confusion, Defendants incorrectly claim that Soter cannot recover damages under New York law.  (ECF 58 at 12 n.8)

Defendants further argue that Soter cannot plead unfair competition or false association because, "the alleged 'compatibility' statement is demonstrably not false" and because Soter "omits the most relevant part of that form."  (ECF No. 58 at 12-13)  But here again, what portions of the form are relevant present a question of fact and nowhere in the bid submission did Defendants inform Mission that Halo "was <u>not</u> compatible with the FlySense® platform."

Defendants' cited *Blockchain Luxembourg S.A. v. Paymium, SAS*, Civ. No. 18-8612, 2019 WL 4199902 (S.D.N.Y. Aug. 7, 2019), is inapposite.  There, a false advertising claim based on two statements were found not actionable because "they [we]re not false."  *Id*. at *21.  Here in contrast, the statement that Halo is compatible with the FlySense® platform <u>is</u> false.  Defendants further argue that even if the Mission submission contained a compatibility statement, "the fact that one product is compatible with another does not, on its face, suggest that there is any affiliation, connection, or association between the products or their manufacturers" or that "one manufacturer sponsors, approves, or endorses the other product."  (ECF No. 58 at 16)  Soter disagrees and submits that a "compatibility statement" like the one made to Mission <u>does</u> suggest an "affiliation, connection or association between the products or their manufacturers" and/or that Soter "approve[d], or endorse[d]" the Halo Device.  *See*, *e.g.*, *Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F. Supp. 1301, 1311 (N.D. Cal. 1998) (injunction granted where "Microsoft's use of a

JAVA Compatible logo [on its software products] falsely implie[d] that its software products implemented . . . JAVA Technology in a manner approved by Sun"). Defendants could have easily stated that Halo was offered as a "district approved equal," but instead, they reproduced the specification that required compatibility with the FlySense® platform verbatim. (ECF 59-1 at 6)

## III.    The Court Should Not Dismiss Soter's New York Common Law Claims

Defendants argue that Soter's New York trademark and unfair competition claims based on the alleged "compatibility statement" must be dismissed because Soter did not allege that the alleged 'compatibility statement' was made in bad faith." (ECF No. 58 at 18)  Here again, as explained in Soter's FAC, brief, Peterson declaration, and at the July 2 court conference, Soter's unfair competition claims are based on many acts of unfair competition including (i) Defendants' diversion through the Infringing Domain Name; (ii) their false statements to a West Coast school; and (iii) to Mission CISD.  Soter's FAC alleged bad faith related to its unfair competition claim, stating that "Defendants' use of the Infringing Domain Name during the Period of Diversion . . . *was at all times in bad faith*" (FAC ¶ 37, emphasis added); that "Defendants registered, acquired and/or used the Infringing Domain Name possessing a bad faith intent to profit from the FlySense® Mark." (*Id*. ¶ 61), and "performed [such] acts in bad faith, to trade on the Plaintiff's goodwill and valuable rights in and to the FlySense® Mark." (*Id*. ¶ 111)  The court further found that Plaintiff made a showing of bad faith intent to profit from the FlySense® Mark.  (ECF 28 at 1)

### A.    Soter Properly Pled A Product Disparagement Claim Under New York Law

Defendants' challenge to Soter's product disparagement claim should be rejected.  (ECF 58 at 2, 18-22)  A product disparagement claim must plead that (1) disparaging statements; (2) were published to a third person; (3) with malice; (4) causing special damages.  *See Charles Atlas, Ltd. v. Time-Life Books, Inc*., 570 F. Supp. 150, 153 (S.D.N.Y. 1983).  Soter pled all of these elements, alleging that "in 2019, [a] representative of Defendants made false statements to a third

21

person, a school on the West Coast which was at that time a potential customer of Plaintiff's, that Plaintiff's FlySense® product did not work, contained too many false positives and was embroiled in litigation[;]" (FAC ¶ 116, 118); with malice (FAC ¶ 119); causing monetary losses in the amount of at least $1990." (FAC ¶ 120)[20]  Soter's allegations satisfy Rule 8(a) pleading standards.[21]

Notably, Defendants do not even attempt to argue (nor could they) that these statements were either true or <u>not</u> published to a third party.  Instead, they argue that the statements that "FlySense® does not work" and "leads to too many false positives" are nonactionable puffery. (ECF 58 at 2 & 19, citing *Verizon Directories Corp. v. Yellow Book USA Inc.,* 309 F. Supp. 2d 401, 406 (E.D.N.Y. 2004) & *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201 (S.D.N.Y. 1986)).  But these statements <u>are</u> actionable.  For example, in *Brignoli*, the court stated:

> A claim in general terms of superiority of one's product over that of a competitor is mere 'puffing' and is not actionable . . . [m]ere general statements of comparison, [] that the defendant's goods are the best . . . or are better than plaintiff's are privileged so long as they contain no specific assertions of unfavorable facts reflecting upon the rival product.' . . .

*Brignoli*, 645 F. Supp. at 1209.  Here, unlike the facts in *Brignoli*, Defendants did not make a "general statement[] of comparison," stating that Halo "worked better" or "had less false positives than" FlySense®.  Instead they said that FlySense® did not work, had too many false positives, and was embroiled in litigation—in other words, unfavorable facts about a rival product.  (FAC ¶ 116)[22]  These statements are more akin to those in *Bridge C.A.T. Scan Associates v. Ohio-Nuclear, Inc.*, 608 F. Supp. 1187, 1193 (S.D.N.Y. 1985), that products were "defective" and did "not operate properly and efficiently with reliability[.]" While Defendants further argue that their

---

[20]   Contrary to Defendants' argument (ECF 58 at 21), Soter did not allege that as a result Soter lost this customer.
[21]   Because the statements referred to FlySense®, *N. Am. Olive Oil Ass'n v. D'Avoilio Inc*., Civ. No. 16-6986, 2020 WL 2079421 (E.D.N.Y. April 30, 2020) (ECF 58 at 19) is inapplicable.  There, it was "unclear how [a] statement about the poor quality of . . . olive oil produced in the Mediterranean area relate[d] in any way to the [plaintiff], a trade association of 'marketers, packagers, producers and importers of olive oil for sale in the United States and Canada.")
[22]   *Verizon Directories* is equally inapposite.  There, the court ruled that the plaintiff had not sufficiently alleged special damages.  Here in contrast, Soter alleged special damages of at least $1990.  (FAC ¶¶ 120-121)

FlySense® was "embroiled in litigation" statement is not actionable because it does not degrade the quality of FlySense® (ECF 58 at 20), this statement does suggest that FlySense® is faulty and may have injured someone.  Moreover, how a reasonable person would perceive such statement, and whether Defendants believed this to be true at the time the statement was made, are questions of fact not suitable for resolution on a motion to dismiss.  *See Dreamcatcher Software Dev., LLC v. Pop Warner Little Scholars, Inc*., 298 F. Supp. 2d 276, 286 (D. Conn. 2004) (fact questions remained as to whether software could or could not be used in conjunction with the internet.)[23]

Next, Defendants argue that the FAC's allegations of malice are conclusory, boilerplate and untethered to any Defendant.  (ECF 58 at 20)  But because Plaintiff pled a plausible claim (FAC ¶¶ 117-119), it is entitled to discover whether Defendants knew such statements were false at the time the statements were made or acted with reckless disregard for the truth.[24]  *See Twombly*, 550 U.S. at 570; *Charles Atlas, Ltd.*, 570 F. Supp. at 155 (allegations of malice were sufficient). Here again, such knowledge is exclusively in Defendants' possession and Soter's product disparagement allegations must be read in conjunction with all other allegations incorporated by reference into that claim, which allege a willful intent to injure and take business away from Soter.

Defendants further argue that Plaintiff fails to properly plead special damages because the customer is not identified and the damages are not itemized.  (ECF 58 at 2 & 21)  But Plaintiff's allegations were sufficient to raise a factual dispute as to special damages.  *See Stockalert, Inc. v. Nasdaq Stock Mkt*., Civ. No. 95-9335(JFK), 1998 WL 556036, at *18 (S.D.N.Y. Aug. 31, 1998) (material factual dispute existed on the issue of special damages).  If the Court deems further facts necessary, then Soter respectfully seeks leave to amend to add further facts supporting this claim.

---

[23]   If the statement was about Plaintiff, as Defendants claim, then injury should be presumed. (ECF 58 at 8)
[24]   Defendants' cited *General Sec., Inc. v. APX Alarm Sec. Sol'ns, Inc*., 647 F. Supp. 2d 207, 216 (N.D.N.Y. 2009), supports Soter's position, not Defendants', as malice was found to be sufficiently pled.

**IV.    Plaintiff's Allegations Against A Plus and Advance Satisfied Fed. R. Civ. P. 8(a)**

Defendants argue that A Plus and Advance should be dismissed from the case because they are "independent companies" that had "nothing to do with" conduct pled in the FAC, and the FAC fails to provide "fair notice" of the claims against them.  (ECF No. 58 at 23-24)  This is incorrect.

Unlike the facts in *Ochre LLC v. Rockwell Architecture Planning & Design*, Civ. No. 12-2837(KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) (ECF 58 at 24), Soter's FAC alleges that all three defendants advertise Defendants' Halo Device, share offices, resources and executives. (FAC ¶¶ 9-12, 106)  The FAC also pled specific allegations about each defendant.  For example, Soter alleged that A Plus: (1) conspires with other defendants to make, sell, offer for sale and distribute Halo Devices (FAC ¶ 8); (2) advertises Halo on its website (*id*. ¶ 10); (3) shares offices, resources and executives with the other named Defendants, including Mr. Antar (FAC ¶¶ 12, 106); and (4) had actual and constructive knowledge of the FlySense® Mark and Plaintiff's superior rights in the same because it tried to become a FlySense® reseller (FAC ¶ 39, 80, & 107).[25]

As to Advance, Soter specifically alleged that Advance conspires with other defendants to make, sell, offer for sale and distribute Halo (FAC ¶ 8) and advertises Halo on its website (FAC ¶ 11).  These allegations are sufficient under Fed. R. Civ. P. 8(a).  *See Canon USA, Inc. v. F&E Trading LLC*, Civ. No. 15-6015(DRH)(AYS), 2017 WL 4357339, at *8 (E.D.N.Y. Sept. 29, 2017) (allegations that defendants were similarly situated, shared a common principal and participated in identical actions satisfied Rule 8(a).)  Further, since expedited discovery has revealed that Mr. Antar, a top executive at all three Defendants (FAC ¶ 12), purchased the Infringing Domain Name (Exhibit B), by virtue of Mr. Antar's position with **each of the Defendants, all of them are**

---

[25]    Because expedited discovery has revealed that A Plus <u>was</u> involved in cybersquatting and purchasing the Infringing Domain Name (Ex. B), Defendants wrongly claim that any amendment regarding A Plus would be futile.

implicated in Soter's cybersquatting, trademark infringement and unfair competition claims. *Id.* Further, A Plus and Advance waived any right to challenging the sufficiency of the allegations against them by consenting to be bound by the preliminary injunction. (ECF 51)

**V.      To The Extent Soter's Allegations Are Deficient, Leave to Amend Should be Granted**

Contrary to Defendants' position (ECF No. 58 at 22), if the Court finds any infirmities in Soter's allegations, Soter should be afforded leave to amend. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (citations omitted); *Isaac v. City of New York,* Civ. No. 17-1021(PGG), 2018 WL 1322196, at *8 (S.D.N.Y. Mar. 13, 2018) (leave to amend granted to file a Second Amended Complaint). Soter has not acted in bad faith and Defendants will not be prejudiced,[26] as the case is only six weeks old and Defendants have not yet filed an answer. Further, Soter is now in possession of facts to further support its claims. *See supra* pp. 4 n.4, 9, 18-19, 24-25. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699 (2d Cir. 2010) does not support Defendants' opposition to amendment. (ECF 58 at 4, 23) There, a motion to amend was made three years after the complaint was filed and after a summary judgment motion was filed. *Id.* at 726. This case, in contrast, is only six weeks old and no summary judgment motion has been filed.

**<u>CONCLUSION</u>**

For at least these reasons, Defendants' motion to dismiss should be denied in its entirety.

---

[26]   Under the circumstances presented here, litigation costs cannot amount to prejudice. (ECF 58 at 23) *See Powell v. Ocwen Fin. Corp.*, Civ. No. 1:18-cv-01951(VSB)(SDA), 2019 WL 6210810, at *3 (S.D.N.Y. Nov. 21, 2019). Having openly infringed Soter's trademark on the internet and actively diverted potential Soter customers to their own competing Halo Device, Defendants brought such costs onto themselves.

Dated: August 17, 2020     /s/Wendy R. Stein

           Wendy R. Stein
           Jean E. Dassie
           **GIBBONS P.C.**
           1 Pennsylvania Plaza, 37th Floor
           New York, NY 10119
           Telephone: (212) 613-2000
           Email: wstein@gibbonslaw.com
           Email: jdassie@gibbonslaw.com

           Christopher H. Strate
           Christine A. Gaddis
           **GIBBONS P.C.**
           One Gateway Center
           Newark, NJ 07102
           Telephone: (973) 596-4500
           Email: cstrate@gibbonslaw.com
           Email: cgaddis@gibbonslaw.com

           *Attorneys for Plaintiff*
           *Soter Technologies LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2020, a true and correct copy of the foregoing

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**

**MOTION TO DISMISS FIRST AMENDED COMPLAINT** was filed on the ECF system

and therefore, automatically served on counsel of record for Defendants in this case.


<u>s/ Wendy R. Stein</u>